UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FABIO OLIVEIRA,

    **Plaintiff,**

 **v.**          **CASE NO:**

SHARED PRACTICES GROUP, LLC,

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, FABIO OLIVEIRA, (hereinafter "Plaintiff" or "Mr. Oliveira"), by and through the undersigned counsel, hereby sues Defendant, SHARED PRACTICES GROUP, LLC (hereinafter "Defendant," or "Company") and alleges:

## INTRODUCTION

1.    1. The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on disability and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., and the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"). Plaintiff further

seeks damages for breach of contract and unpaid wages arising from Defendant's violation of a written four-year employment agreement.

2.     As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his disability, and retaliated against him in violation of his rights under the ADA and the FCRA. Plaintiff further alleges that Defendant materially breached a written employment agreement by terminating Plaintiff's employment without cause and failing to pay contractual salary increases and educational benefits.

3.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, loss of future pay increases, and unpaid contractual wages and benefits. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§

1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6.     This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## PARTIES

8.     Plaintiff is FABIO OLIVEIRA, a 36-year-old male who suffers from a serious medical condition requiring ongoing treatment with no cure. Plaintiff resides in Wesley Chapel, Florida, in Hillsborough County.

9.     Plaintiff is a member of a class protected against discrimination

and retaliation based on his disability under the ADA and the FCRA.

10. During the period from September 16, 2022, until January 3, 2025, Defendant employed Plaintiff.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA and the FCRA.

13. The Defendant, SHARED PRACTICES GROUP, LLC, is a Limited Liability Company with its principal place of business located at 15333 N Pima Rd, Scottsdale, AZ 85260.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business as a dental service organization operating dentures and implants practices, employs approximately 200 employees, and conducted business operations in Florida through Plaintiff's remote work performed from Hillsborough County, Florida.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to the ADA and the FCRA.

16.     Accordingly, Defendant is liable under the ADA and the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17.     Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18.     On January 21, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability discrimination and retaliation.

19.     On March 31, 2026, the EEOC issued a Notice of Suit Rights for EEOC Charge Number 511-2025-01450.

20.     More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

21.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

22.    Plaintiff suffers from a serious medical condition requiring ongoing treatment with no cure. This condition substantially limits one or more major life activities, including but not limited to normal bodily functions, and requires continuous medical care and treatment by a gastroenterologist, Dr. James M. Stewart, MD.

23.    On September 16, 2022, Plaintiff began working for Defendant as Director of Operations and Project Management at an annual salary of $160,000. Plaintiff worked remotely from his residence in Florida, initially from Utah through March 2024, and thereafter from Hillsborough County, Florida.

24.    Throughout his employment, Plaintiff demonstrated exceptional performance and dedication to his role. He consistently provided thorough weekly progress reports and maintained a high project success rate.

25.    On November 17, 2023, following an excellent performance review, Plaintiff was promoted to Vice President of Strategy (also referenced as Vice President of Revenue). In connection with this promotion, Plaintiff

and Defendant executed a written four-year employment agreement effective from November 17, 2023 through November 17, 2027.

26. The four-year employment agreement provided for specific salary increases: Year 1 at $160,000, Year 2 at $175,000, Year 3 at $183,000, and Year 4 at $194,000. The agreement also included educational benefits, specifically company sponsorship of the Wharton Execution Program in Year 1 and $5,000 annually for continued education in Years 2-4.

27. In November 2023, Plaintiff received the "SPy for Constant Improvement" award, recognizing his outstanding contributions to the company.

28. At no time during his employment did Plaintiff receive any negative performance reviews, disciplinary actions, write-ups, or documentation of policy violations.

29. In March 2024, Plaintiff required medical leave due to his serious medical condition and took approximately 2.5 weeks of sick leave. Plaintiff properly notified Defendant of his condition and his need for continued health insurance coverage to manage his ongoing medical treatment.

30. Prior to his medical leave, Plaintiff reported directly to George Hariri, Defendant's Co-Founder and CEO/CFO. However, upon his return

from medical leave, Defendant changed Plaintiff's reporting structure without explanation, reassigning him to report to Matt Guarino, Defendant's Co-Founder and COO.

31. Following Plaintiff's return from medical leave in March 2024, Defendant began systematically reducing Plaintiff's responsibilities and authority in a discriminatory manner based on his disability.

32. Over the course of approximately six months following his medical leave, Defendant removed all five of Plaintiff's core responsibilities and reassigned them to other employees.

33. Defendant required Plaintiff to hand off over thirty percent (30%) of his active projects to other employees, effectively diminishing his role and influence within the organization.

34. Defendant removed six out of seven of Plaintiff's recurring meetings from his schedule, systematically excluding him from important decision-making processes and communications.

35. Defendant assigned Plaintiff projects of significantly lesser importance compared to his previous high-level strategic responsibilities, effectively marginalizing his contributions to the company.

36. On August 29, 2024, Matt Guarino directly inquired about

Plaintiff's medical condition, asking specifically "how my disease was impacting my energy levels and ability to perform." This inappropriate medical inquiry violated Plaintiff's privacy rights and demonstrated discriminatory treatment based on his disability.

37.    On or around September 2, 2024, despite George Hariri's recommendation and Plaintiff's qualifications, Defendant failed to consider Plaintiff for the position of VP of Operations, a role for which he was well-suited based on his experience and performance history.

38.    In September 2024, during the company's open enrollment period, Plaintiff upgraded his health insurance coverage from a Cigna PPO plan to a Buy-Up PPO plan to better manage his ongoing medical treatment needs.

39.    On October 25, 2024, approximately one week before Plaintiff would have become eligible for his contractual Year 2 salary increase to $175,000, Defendant presented Plaintiff with a "role realignment" proposal that constituted an unlawful demotion.

40.    The proposed demotion was to take effect on December 1, 2024, and would have changed Plaintiff's position from Vice President of Strategy to Director of Performance Improvement, a position of significantly lesser

responsibility and authority.

41. The demotion proposal included a reduction in Plaintiff's annual salary from $160,000 to $125,000, representing a decrease of $35,000 annually.

42. The timing of the demotion proposal, coming shortly after Plaintiff's health insurance upgrade and just before his contractual salary increase, demonstrated Defendant's retaliatory intent based on his disability and use of medical benefits.

43. The demotion also eliminated Plaintiff's $5,000 annual continued education benefit that was guaranteed under his four-year employment agreement.

44. Faced with the loss of his health insurance coverage needed for his ongoing medical treatment, Plaintiff reluctantly accepted the unlawful demotion to maintain his benefits.

45. On January 3, 2025, approximately one month after accepting the demotion and roughly fourteen months into his four-year employment agreement, Defendant terminated Plaintiff's employment without cause.

46. Defendant characterized the termination as a "position elimination" and cited a "shift in resource allocation" as justification, despite

Plaintiff's continued satisfactory performance in his demoted role.

47.    Defendant offered Plaintiff severance pay of only $4,807.70, representing merely two weeks' pay at his reduced salary rate, which was wholly inadequate compensation for the breach of his four-year employment agreement.

48.    Defendant terminated Plaintiff's health insurance benefits effective January 3, 2025 at 11:59 PM, cutting off his access to necessary medical coverage for his ongoing condition.

49.    As a direct and proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered significant economic damages, including the loss of his remaining contractual salary through November 17, 2027, totaling $453,322.00, plus $15,000 in educational benefits.

50.    Plaintiff has also suffered non-economic damages, including humiliation, depression, anxiety, emotional distress, and damage to his professional reputation as a result of Defendant's unlawful conduct.

51.    At all times relevant herein, Plaintiff was a qualified individual with a disability who could perform the essential functions of his job with or without reasonable accommodation.

52.    Defendant's actions were motivated by discriminatory animus

based on Plaintiff's disability and constituted unlawful retaliation for his exercise of rights protected under federal and state disability discrimination laws.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Discrimination Based on Disability
### 42 U.S.C. §§ 12101-12213

53.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54.    At all times material herein, Defendant employed Plaintiff and was an "employer" within the meaning of the ADA.

55.    At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of the ADA in that he had a physical impairment that substantially limited one or more major life activities and he could perform the essential functions of his position with or without reasonable accommodation.

56.    At all times material herein, Defendant employed Plaintiff as Vice President of Strategy pursuant to a written four-year employment agreement.

57. Following Plaintiff's disclosure of his serious medical condition and his disability-related medical leave in March 2024, Defendant subjected Plaintiff to adverse employment actions.

58. After Plaintiff returned from medical leave, Defendant changed Plaintiff's reporting structure without explanation, reassigning him from reporting to George Hariri to reporting to Matt Guarino.

59. Following Plaintiff's return from medical leave, Defendant systematically reduced Plaintiff's responsibilities and authority, including by removing his core responsibilities, requiring him to transfer a substantial portion of his projects to others, removing him from recurring meetings, and assigning him work of lesser importance.

60. On or about August 29, 2024, Defendant, through Matt Guarino, made an improper inquiry into Plaintiff's medical condition by asking how Plaintiff's disease was affecting his energy levels and ability to perform.

61. On or about September 2, 2024, despite Plaintiff's qualifications and recommendation for advancement, Defendant failed to consider Plaintiff for the VP of Operations role.

62. On or about October 25, 2024, Defendant presented Plaintiff with a demotion from Vice President of Strategy to Director of Performance

Improvement, with a reduction in annual salary from $160,000 to $125,000 and a loss of educational benefits.

63. On January 3, 2025, Defendant terminated Plaintiff's employment, characterizing the action as a position elimination despite Plaintiff's satisfactory performance.

64. Defendant took the foregoing actions against Plaintiff because of Plaintiff's disability.

65. Defendant's conduct constituted unlawful discrimination against Plaintiff on the basis of disability in violation of the ADA.

66. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, FABIO OLIVEIRA, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, SHARED PRACTICES GROUP, LLC, and the following relief:

A. A declaration that Defendant violated the ADA by discriminating against Plaintiff because of his disability;

B. Back pay, front pay, lost benefits, and other equitable and

monetary relief sufficient to make Plaintiff whole;

C.   Compensatory damages as allowed by law;

D.   Pre-judgment and post-judgment interest as allowed by law;

E.   Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F.   Such other and further relief as the Court deems just and proper.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Retaliation
### 42 U.S.C. §§ 12101-12213

67.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 52 of this Complaint as though fully set forth herein.

68.   At all times material herein, Defendant employed Plaintiff and was an "employer" within the meaning of the ADA.

69.   Plaintiff engaged in protected activity under the ADA by notifying Defendant of his serious medical condition, taking disability-related medical leave in March 2024, and requesting continuation of health insurance coverage needed for treatment of his condition.

70.   Plaintiff also engaged in protected activity under the ADA by

asserting rights associated with his disability and need for medical treatment.

71. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions.

72. Those materially adverse actions included changing Plaintiff's reporting structure, reducing his responsibilities and authority, removing him from meetings and decision-making processes, subjecting him to improper medical questioning, denying him consideration for promotion, demoting him with a substantial salary reduction and loss of benefits, and ultimately terminating his employment.

73. The adverse actions taken against Plaintiff were materially adverse in that they would dissuade a reasonable employee from engaging in protected activity under the ADA.

74. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions.

75. The temporal proximity between Plaintiff's protected activity and the adverse actions, together with the sequence and escalation of those actions, support an inference of retaliatory intent.

76. Defendant's conduct constituted unlawful retaliation against

Plaintiff in violation of the ADA.

77.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, FABIO OLIVEIRA, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, SHARED PRACTICES GROUP, LLC, and the following relief:

A.    A declaration that Defendant violated the ADA by retaliating against Plaintiff for engaging in protected activity;

B.    Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

C.    Compensatory damages as allowed by law;

D.    Pre-judgment and post-judgment interest as allowed by law;

E.    Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F.    Such other and further relief as the Court deems just and proper..

## COUNT III
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT
### Disability Discrimination
### Florida Statutes §§ 760.01-760.11

78.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 52 of this Complaint as though fully set forth herein.

79.   At all times material herein, Defendant was an employer within the meaning of the Florida Civil Rights Act.

80.   At all times material herein, Plaintiff was a qualified individual with a disability or handicap within the meaning of the FCRA in that he had a physical impairment that substantially limited one or more major life activities and he could perform the essential functions of his position with or without reasonable accommodation.

81.   At all times material herein, Defendant employed Plaintiff as Vice President of Strategy pursuant to a written four-year employment agreement.

82.   Following Plaintiff's disclosure of his serious medical condition and his disability-related medical leave in March 2024, Defendant subjected Plaintiff to adverse employment actions.

83. After Plaintiff returned from medical leave, Defendant changed Plaintiff's reporting structure without explanation.

84. Defendant then systematically reduced Plaintiff's responsibilities and authority, including by removing core responsibilities, requiring him to relinquish projects, excluding him from recurring meetings, and assigning him less significant work.

85. Defendant, through Matt Guarino, made an improper inquiry into Plaintiff's medical condition on or about August 29, 2024.

86. Defendant also failed to consider Plaintiff for a promotion for which he was qualified and later demoted Plaintiff, reduced his compensation, eliminated educational benefits, and terminated his employment.

87. Defendant took the foregoing actions against Plaintiff because of Plaintiff's disability.

88. Defendant's conduct constituted unlawful disability discrimination in violation of the FCRA.

89. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss

of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, FABIO OLIVEIRA, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, SHARED PRACTICES GROUP, LLC, and the following relief:

A.   A declaration that Defendant violated the FCRA by discriminating against Plaintiff because of his disability;

B.   Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

C.   Compensatory damages as allowed by law and within any applicable statutory limits;

D.   Pre-judgment and post-judgment interest as allowed by law;

E.   Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F.   Such other and further relief as the Court deems just and proper.

**COUNT IV**
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT**
**Retaliation**
**Florida Statutes §§ 760.01-760.11**

90.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 52 of this Complaint as though

fully set forth herein.

91. At all times material herein, Defendant was an employer within the meaning of the FCRA.

92. Plaintiff engaged in protected activity under the FCRA by notifying Defendant of his serious medical condition, taking disability-related medical leave in March 2024, and requesting continuation of health insurance coverage needed for treatment of his condition.

93. Plaintiff also engaged in protected activity under the FCRA by asserting rights associated with his disability and need for medical treatment.

94. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions.

95. Those materially adverse actions included changing Plaintiff's reporting structure, reducing his responsibilities and authority, excluding him from meetings and decision-making processes, subjecting him to improper medical questioning, denying him consideration for promotion, demoting him with a substantial salary reduction and loss of benefits, and ultimately terminating his employment.

96. The adverse actions taken against Plaintiff were materially

adverse in that they would dissuade a reasonable employee from engaging in protected activity under the FCRA.

97.     There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions.

98.     The temporal proximity between Plaintiff's protected activity and the adverse actions, together with the sequence and escalation of those actions, support an inference of retaliatory intent.

99.     Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of the FCRA.

100.    As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost wages and benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff, FABIO OLIVEIRA, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, SHARED PRACTICES GROUP, LLC, and the following relief:

A.      A declaration that Defendant violated the FCRA by retaliating against Plaintiff for engaging in protected activity;

B.      Back pay, front pay, lost benefits, and other equitable and

monetary relief sufficient to make Plaintiff whole;

C.    Compensatory damages as allowed by law and within any applicable statutory limits;

D.    Pre-judgment and post-judgment interest as allowed by law;

E.    Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F.    Such other and further relief as the Court deems just and proper.

## COUNT V
## BREACH OF CONTRACT

101.  Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 52 of this Complaint as though fully set forth herein.

102.  On November 17, 2023, Plaintiff and Defendant entered into a written four-year employment agreement effective from November 17, 2023 through November 17, 2027.

103.  The employment agreement was a valid and enforceable contract supported by adequate consideration.

104.  Under the employment agreement, Defendant agreed to employ Plaintiff as Vice President of Strategy during the contract term and to pay

him compensation in specified annual amounts, including $160,000 in Year 1, $175,000 in Year 2, $183,000 in Year 3, and $194,000 in Year 4.

105. The employment agreement also provided educational benefits, including $5,000 annually for continued education in Years 2 through 4.

106. Plaintiff substantially performed his obligations under the employment agreement.

107. Defendant materially breached the employment agreement by demoting Plaintiff, reducing his compensation, eliminating contractual educational benefits, and terminating Plaintiff's employment before expiration of the contract term.

108. Defendant further breached the employment agreement by failing to pay compensation and benefits due under the agreement, including the Year 2 salary increase that became due during Plaintiff's employment.

109. As a direct and proximate result of Defendant's breaches, Plaintiff has suffered damages in an amount to be proven at trial, including lost compensation and lost contractual benefits.

WHEREFORE, Plaintiff, FABIO OLIVEIRA, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against

Defendant, SHARED PRACTICES GROUP, LLC, and the following relief:

A. A declaration that Defendant materially breached the parties' written employment agreement;

B. Compensatory damages in an amount to be proven at trial for lost compensation and contractual benefits caused by Defendant's breach;

C. Pre-judgment and post-judgment interest as allowed by law;

D. Costs as allowed by law; and

E. Such other and further relief as the Court deems just and proper.

## COUNT VI
## UNPAID WAGES

110. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in Paragraphs 1 through 52 of this Complaint as though fully set forth herein.

111. During his employment, Plaintiff earned wages and compensation under the parties' employment agreement, including compensation at the Year 2 salary rate that became due on November 17, 2024.

112. Plaintiff also earned or became entitled to contractual

educational benefits that became due during his employment.

113.   Plaintiff performed the work required of him and satisfied the conditions necessary to receive such wages and compensation while employed by Defendant.

114.   Defendant failed to pay Plaintiff all wages and compensation earned and due during Plaintiff's employment.

115.   Specifically, Defendant failed to pay Plaintiff the full compensation owed after the Year 2 increase became effective and failed to provide compensation and benefits otherwise earned and due before termination.

116.   As a direct and proximate result of Defendant's failure to pay earned wages, Plaintiff has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff, FABIO OLIVEIRA, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, SHARED PRACTICES GROUP, LLC, and the following relief:

A.   An award of unpaid wages and earned compensation in an amount to be proven at trial;

B.   An award of unpaid earned benefits or their monetary

equivalent in an amount to be proven at trial;

C.      Pre-judgment and post-judgment interest as allowed by law;

D.      Costs as allowed by law; and

E.      Such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 16th day of April 2026.

> */s/ Jason W. Imler, Esq*
> Jason W. Imler
> Florida Bar No. 1004422
> Alberto "Tito" Gonzalez
> Florida Bar No. 1037033
> **Imler Law**
> 23110 State Road 54, Unit 407
> Lutz, Florida 33549
> (P): 813-553-7709
> Jason@ImlerLaw.com
> Tito@ImlerLaw.com
> Ashley@ImlerLaw.com
> Tiffany@ImlerLaw.com